UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WARREN BESCO, | CASE NO. 3:15-CV-05493-RJB |
| Plaintiff, | ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE |
| v. | |
| CITY OF LONGVIEW, | |
| Defendant. | |

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. 38) and Plaintiff's Motion to Strike (Dkt. 41). The Court has considered the pleadings filed regarding the motions and the remainder of the file herein.

In this case, Plaintiff asserts claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, and the Washington Law Against Discrimination ("WLAD"), RCW chapter 49.60 *et seq.,* in connection with Defendant's termination of his employment.  Dkt. 1. Plaintiff claims damages for lost earnings (in the form of front pay and

back pay), and lost benefits, including lost contributions to Plaintiff's retirement account and lost future retirement income. Dkt. 15.

Defendant now moves for summary dismissal of this action, arguing that judicial estoppel bars Plaintiff's claims because of:  (1) Plaintiff's representations in his bankruptcy petitions and (2) his statements in connection with his applications for Social Security Disability Insurance ("SSDI") benefits and disability benefits with his insurance company, Unum Life Insurance ("Unum").  Dkts. 38 and 46.  Defendant also moves for summary dismissal of Plaintiff's claim for lost wages because of his failure to mitigate damages.  *Id*.  Plaintiff moves to strike the Declaration of Angela Kvryan (Dkt. 39).  Dkt. 41.  For the reasons stated below, the motion to strike (Dkt. 41) should be denied without prejudice and the motion for summary judgment (Dkt. 38) should be denied.

## I.      BACKGROUND FACTS AND PENDING MOTION

### A.  FACTS

1.  Plaintiff's Employment with Defendant, Application for Disability Insurance Benefits and his Discharge

Plaintiff was employed by Defendant from approximately March of 1984 through January of 2014, ending as a Lead Utility Systems Operator. Dkt. 1. In December of 2012, Plaintiff injured his shoulder, and in June of 2013, Plaintiff scheduled shoulder surgery and took leave under the Family Medical Leave Act ("FMLA").  *Id*.

On July 1, 2013, Plaintiff filed a claim for short-term disability insurance benefits with Unum. Dkt. 39, at 1.  By September 25, 2013, Unum determined that Plaintiff had a long-term disability, as defined under the policy, because they felt he could not perform his "own occupation."  Dkt. 39, at 3.  (Unum pays 24 months of benefits under this provision, so paid Plaintiff benefits until September 24, 2015.  *Id.*)  Unum states that on December 18, 2013, after

1   being told by Plaintiff that his doctor determined that he was unable to perform his job due to his

2   injury, Unum offered Plaintiff vocational rehabilitation counseling.  Dkt. 39, at 1.  Plaintiff

3   declined.  *Id.,* at 2.

4           In its Amended Answer, Defendant asserts that it received certification from Plaintiff's

5   medical provider that he had a permanent or long-term disability that rendered him physically

6   unable to perform the essential functions of his job in December of 2013.  Dkt. 12, at 2-3.

7           At a January 8, 2014, meeting, Plaintiff explained to Defendant that he felt he could

8   return to the work that he was doing before he took leave because it was really "light duty,"

9   despite the actual job description.  Dkts. 42, at 3; and 40-1, at 21.   He asserted that his job

10  description was not necessarily accurate:  "My job description was a job description that covered

11  every leadman job in the water and sewer department, and they were all different jobs.  Mine

12  was more in the office and helping my guys, unlike the dig crews, the pump crews, and stuff like

13  that."  Dkt. 40-1, at 21.  Plaintiff maintained that his medical doctor disqualified him from his

14  job based on an inaccurate job description.  *Id.* Plaintiff testified that his job did include lifting

15  over 25 pounds 10% of the time, had to use both arms to pull or push, and described times when

16  tightening bolts or maneuvering fittings would bother him.  Dkt. 40-1, at 22-29.  Plaintiff

17  testified that when he was having difficulty with his injury, he would adjust and use his other

18  arm. Dkt. 44-4, at 13.  Jeff Hubbard, Plaintiff's replacement and co-worker, described Plaintiff's

19  duties the last year of his employment as laying out and designing projects, scheduling all

20  projects, site inspection, and crew member assignment.  Dkt. 44-6, at 12.  Randy Hamilton,

21  Plaintiff's immediate supervisor, testified that Plaintiff would spend only 5-10% of his day doing

22  heavy work.  44-5, at 5-7.  Mr. Hamilton stated that the heavy work could be shared among other

23

24

1 crew members. *Id.* In any event, Defendant terminated Plaintiff's employment in January of

2 2014. Dkt. 12.

3         2.   <u>Plaintiff's Bankruptcy and Filings Before and After His Discharge</u>

4       Plaintiff and his wife filed for relief under Chapter 13 of the U.S. Bankruptcy Code on

5 October 11, 2011. *In Re Besco,* 11-48232-PBS (W.D. Wash 2011); filed in this case at Dkt. 40-

6 5. As a part of their petition, Plaintiff and his wife filed a "Schedule B – Personal Property."

7 Dkt. 40-5, at 11-14. In this 2011 pleading, Plaintiff and his wife did not disclose having any

8 potential claims or causes of action. *Id.*

9       A week or two after Plaintiff's employment was terminated in 2014, he researched

10 potential causes of action against the Defendant. Dkt. 40-1, at 7. A few months later, on April 1,

11 2014, Plaintiff and his wife filed a notice converting their Chapter 13 bankruptcy petition to a

12 Chapter 7 petition, seeking an elimination of all unsecured debt. Dkt. 40-5, at 43. The

13 bankruptcy court ordered that they file "amended schedules, statements and documents,

14 including a chapter 13 plan for cases converted to chapter 13 or a declaration under the penalty

15 of perjury that there has been no change in the schedules, statement and documents . . ." Dkt.

16 40-5, at 46. On April 4, 2014, Plaintiff and his wife filed a declaration, under the penalty of

17 perjury, that "[w]ith the exception of Schedule I and Schedule J there are no changes to the

18 schedules since the commencement of my bankruptcy filing." Dkt. 40-5, at 45. On May 13,

19 2014, Plaintiff filed a "Declaration of Debtor in Rebuttal of the Presumption of Abuse," which

20 he signed under the penalty of perjury, that provided, in part, that he and his wife's "chapter 13

21 case was converted to a case under chapter 7 as [he] was no longer able to maintain the plan

22 payments." Dkt. 40-5, at 46. He further stated:

23         My employer terminated me before I could recover and go back to work. I receive
        some long-term disability but they are pushing me toward Social Security

24

Disability ("SSD").  Social Security has denied my claim at this point.  I will soon
be left without income if my SSD claim is completely denied.

*Id.*

In June of 2014, Plaintiff met with, and hired, his current lawyer, Peter Fels, to pursue

relief from the Defendant.  Dkt. 40-1, at 30-32.  Plaintiff's journal provides "June 2014 – I went

to see Peter L. Fels, PC – I hired Peter.  With Peters [sic] help we are going to sue the City under

the ADA."  Dkt. 40-1, at 37.  Plaintiff states that while he told his bankruptcy lawyer about his

plans to file a lawsuit against Defendant for disability discrimination, Plaintiff did not inform the

bankruptcy trustee or the bankruptcy court of the lawsuit.  Dkt. 40-1, at 32-43.  Plaintiff and his

wife's chapter 7 bankruptcy was discharged on August 11, 2014.  Dkt. 40-1, at 32.

3.  Plaintiff's Application for Social Security Disability Benefits and for Disability
Insurance Benefits

On February 24, 2014, Plaintiff filed an application for disability benefits with the Social

Security Administration ("SSA").  Dkt. 40-3.  In his application, he indicated that he stopped

working because of his condition.  Dkt. 40-3, at 3.  Plaintiff filled out a functional report in

which he asserted "unable to return to [his] field of work, range of motion is very limited.

Lifting is not good on left side."  Dkt. 40-3, at 6.  The SSA eventually denied his application for

benefits.

On September 25, 2015, Unum determined that Plaintiff met the policy's definition of

being unable to work at "any gainful occupation," and so is obligated to pay his benefits (so long

as he continues to meet their standard) for 24 months.  Dkt. 39, at 3.

4.  Plaintiff's Efforts to Mitigate his Damages

Plaintiff is a high school graduate, with various certificates related the work he did in the

Defendant's municipal water department.  Dkt. 42, at 1.  Plaintiff states that he and his wife

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION TO STRIKE- 5

1  looked for jobs weekly on websites, including "the American Water Works Association and the

2  Association of Washington Cities." *Id.,* at 4.  Plaintiff testified that he looked online "several"

3  times for jobs on other websites.  Dkt. 40-1, at 14.  He paid to keep his certifications current so

4  that he remained eligible if there were any openings.  Dkt 42, at 4.  Plaintiff has not submitted an

5  application for another job and has only made two telephone inquires about work (Dkt. 40-1, at

6  15-17) because he was unable to find any jobs similar to his prior position (Dkt. 42).

7       In February 2015, Plaintiff worked as an unpaid intern for around eight months at

8  Pipeline Construction to learn how to be an estimator and inspector.  Dkt. 40-1, at 10-12; 15.

9  Aside from this internship, Plaintiff has had no other employment since his discharge. Dkt. 40-1,

10  at 12.  Plaintiff did not accept the vocational services offered him by Unum, his long-term

11  disability insurer.  Dkt. 39, at 2.

12       **B.  ORGANIZATION OF OPINION**

13       This opinion will first consider whether the Declaration of Angela Kvryan (Dkt. 39)

14  should be stricken, and then whether Plaintiff is judicially estopped from making his claims:

15  either because of his assertions during the pendency of his bankruptcy or in his attempts to

16  receive disability benefits (either through the SSA or his insurance company). Lastly, the opinion

17  will consider whether the case should be dismissed because of Plaintiff's failure to mitigate his

18  damages.

19       **II.      DISCUSSION**

20       **A.  STANDARD ON SUMMARY JUDGMENT**

21       Summary judgment is proper only if the pleadings, the discovery and disclosure materials

22  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

23  movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The moving party is

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION TO STRIKE- 6

1   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

2   showing on an essential element of a claim in the case on which the nonmoving party has the

3   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

4   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

5   for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

6   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

7   metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a

8   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

9   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty*

10  *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

11  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

12          The determination of the existence of a material fact is often a close question. The court

13  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

14  e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect.*

15  *Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor

16  of the nonmoving party only when the facts specifically attested by that party contradict facts

17  specifically attested by the moving party. The nonmoving party may not merely state that it will

18  discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

19  to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*).

20  Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

21  be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

22          **B.  PLAINTIFF'S MOTION TO STRIKE DECLARATION OF KVRYAN**

23

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION TO STRIKE- 7

1    Plaintiff's Motion to Strike the Declaration of Angela Kvryan (Dkt. 39) should be denied

2    without prejudice.  Dkt. 41.

3    Ms. Kvryan states that she was the case worker on Plaintiff's claims for short-term, long-

4    term and permanent disability insurance benefits with Unum.  Dkt. 39.  Plaintiff objects to her as

5    a witness because she wasn't timely disclosed and argues that her declaration is unreliable.  Dkt.

6    41.  Plaintiff notes that her declaration contains quotations of summaries entered by her and

7    others, and does not reveal what questions were asked to elicit the alleged responses.  *Id.*

8    Defendant argues that its failure to disclose Ms. Kvryan as a witness was harmless.  Dkt.

9    46.  It asserts that Plaintiff was aware of the possibility of her being a witness because he had

10   contact with her during the application process, Defendant emailed him and let him know it was

11   considering whether to depose her (although it did not), and Plaintiff could have deposed her.  *Id.*

12   For the purposes of this motion only, and to fully consider the claims and defenses raised,

13   the Court considered this pleading even though the Defendant failed to disclose her as a witness.

14   However, the use of her declaration was of little value because of the reliability issues raised by

15   Plaintiff.

16   **C.  DISMISSAL BASED ON JUDICIAL ESTOPPEL**

17   "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

18   advantage by asserting one position, and then later seeking an advantage by taking a clearly

19   inconsistent position."  *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir.

20   2001).  Courts may consider several factors in determining whether to apply the doctrine in a

21   particular case, including whether: 1) a party's later position is "clearly inconsistent with its

22   earlier position," 2) "the party has succeeded in persuading a court to accept that party's earlier

23   position, so that judicial acceptance of an inconsistent position in a later proceeding would create

24

1    the perception that either the first or the second court was misled," and 3) "the party seeking to

2    assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on

3    the opposing party if not estopped." *Ah Quin v. Cty. of Kauai Dep't of Transp.*, 733 F.3d 267,

4    270 (9th Cir. 2013)(*citing New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)). "Additional

5    considerations may inform the doctrine's application in specific factual contexts." *Id.,* at 750-51.

6           1.   <u>Positions Taken in the Bankruptcy</u>

7         "In the bankruptcy context, the federal courts have developed a basic default rule: If a

8    plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and

9    obtains a discharge (or plan confirmation), judicial estoppel bars the action." *Ah Quin v. Cty. of*

10   *Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).

11        Plaintiff does not deny that he and his wife did not disclose his claims against the

12   Defendant in his bankruptcy.  Dkt. 41.  He asserts that he was not required to do so under the

13   Bankruptcy Code, and so, he has not taken inconsistent positions, and accordingly, judicial

14   estoppel does not apply.  *Id.*

15        Plaintiff and his wife originally filed a petition under Chapter 13 of the Bankruptcy Code.

16   "Chapter 13 allows a debtor to retain his property if he proposes, and gains, court confirmation

17   of a plan to repay his debts over a three- to five-year period." *Harris v. Viegelahn,* 135 S.Ct.

18   1829, 1835 (2015)(*citing* 11 U.S.C. §§1306(b), 1322 and 1327(b)).  "Payments under a Chapter

19   13 plan are usually made from a debtor's future earnings or other future income," and so the

20   Chapter 13 estate includes "both the debtor's property at the time of his bankruptcy petition, and

21   any wages and property acquired after filing." *Id.* (*internal quotations and citations omitted*).

22   Under 11 U.S.C. § 521(a)(1)(B)(i), a debtor is required to file "a schedule of assets and

23

24

1    liabilities."  Debtors, then, must list pending lawsuits in the bankruptcy schedules.  *Ah Quin,* at

2    269.

3           Under a Chapter 7 plan, a debtor's assets, with certain exceptions, are transferred to the

4    estate, liquidated, and the creditors are paid.  *Harris,* at 1835 (*internal quotations and citations*

5    *omitted*).  Unlike a Chapter 13 bankruptcy estate, a Chapter 7 estate does not include future

6    earnings or assets acquired after the filing of the petition.  *Id.*

7           In light of the fact that it is difficult for many debtors to make the payments associated

8    with Chapter 13 plans, "Congress accorded debtors a nonwaivable right to convert a Chapter 13

9    case to one under Chapter 7 at any time."  *Id.*  Plaintiff and his wife indicated to the bankruptcy

10   court that they were having trouble making their payments under the Chapter 13 plan, and so

11   converted their case to a Chapter 7 case.  In a case converted from Chapter 13 to a Chapter 7, §

12   348(f)(1)(A) provides that "a debtor's post petition earnings and acquisitions do not become part

13   of the new Chapter 7 estate."  *Harris*, at 837.  It provides: "property of the [Chapter 7] estate in

14   the converted case shall consist of property of the estate, as of the date of filing of the [initial

15   Chapter 13] petition, that remains in the possession of or is under the control of the debtor on the

16   date of conversion."  *Id.* The Court in *Harris* noted that there is a statutory exception for debtors

17   who convert in bad faith, in § 348(f)(2), which provides: "[i]f the debtor converts a case [initially

18   filed] under chapter 13 ... in bad faith, the property of the estate in the converted case shall

19   consist of the property of the estate as of the date of the conversion."

20          Barring a showing of bad faith, then, when Plaintiff and his wife converted their petition for

21   relief under Chapter 13 to a petition under Chapter 7, the Chapter 7 estate consisted of their

22   property as of October 11, 2011 that remained in their possession or under their control on April

23   1, 2014.  *See* § 348(f)(1)(A) and (f)(2).  The claims against the Defendant did not arise until,

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION TO STRIKE- 10

January 2014, and so Plaintiff and his wife did not have to disclose them to the bankruptcy court.

Accordingly, Plaintiff did not take an inconsistent position with the bankruptcy court.  Further,

Defendant makes no showing that Plaintiff and his wife converted their bankruptcy petition in

bad faith.  Defendant argues that Plaintiff and his wife were not totally forthcoming regarding

Plaintiff's assertion that he will "soon be without income if [his] SSD claim is completely

denied," (made at the time of conversion), because he was receiving disability benefits from

Unum and was insured by his wife's medical plan.  Dkt. 46.  Plaintiff, however, disclosed that he

was receiving disability benefits and they had already disclosed they had medical insurance.

Defendant fails to show that Plaintiff and his wife acted in bad faith when they converted their

bankruptcy petition from a Chapter 13 to a Chapter 7.  Plaintiff did not take an inconsistent

position with the bankruptcy court.

Moreover, there is no showing that the bankruptcy court's acceptance of Plaintiff and his

wife's representations under bankruptcy law that they had no cause of action against the

Defendant in 2011 would create a perception that this court would be misled if it accepted

Plaintiff's current position that he had claims in 2014.  Further, there is no showing Plaintiff

would gain an "unfair advantage or impose an unfair detriment" on the Defendant if not

estopped." *Ah Quin,* at 270.  Plaintiff's claims should not be barred by judicial estoppel because

of Plaintiff and his wife's representations to the bankruptcy court.

> 2. <u>Positions Taken in the Applications for Social Security Disability Benefits and for Long Term Disability Insurance Benefits</u>

"Neither application for nor receipt of disability benefits automatically bars a claimant

from establishing that she is a qualified person with a disability under the ADA." *Johnson v.*

*State, Oregon Dep't of Human Res., Rehab. Div.*, 141 F.3d 1361, 1367 (9th Cir. 1998).  A

plaintiff's representations on applications (either with a private insurer or with the SSA) are not

1    irrelevant, however. *Id.*, at 1368.   "Straightforward summary judgment analysis, rather than

2    theories of estoppel will be appropriate in most cases. Judicial estoppel applies when a party's

3    position is tantamount to a knowing misrepresentation to or even fraud on the court." *Id.*, at

4    1369 (*citations and internal quotations omitted*).   If, however, "incompatible positions are based

5    not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply." *Id.*

6        In this case, Plaintiff is not barred by the doctrine of judicial estoppel from bringing his

7    ADA or WLAD claims based on his assertions before the SSA.   As to the first consideration in

8    determining whether to apply judicial estoppel, the positions he took with the SSA are not

9    "clearly inconsistent" with his claims under the ADA or WLAD. *New Hampshire,* at 749.   "The

10   SSA neither asks nor considers whether individuals can work with accommodation." *Johnson*, at

11   1370.   Second, Plaintiff did not get the first administrative body (the SSA) to accept that he was

12   fully disabled as defined in the statute. *New Hampshire,* at 749.   Third, there is no evidence that

13   the Plaintiff here obtained an unfair advantage. *New Hampshire,* at 750. His application for

14   SSDI was denied.   Defendant's motion to summarily dismiss his claims based on his assertions

15   before the SSA (Dkt. 39) should be denied.

16        Further, Plaintiff should not be barred by the doctrine of judicial estoppel for bringing his

17   ADA and WLAD claims based on his assertions with his disability insurer, Unum.   In his

18   application for short-term benefits on July 1, 2013, Plaintiff reported that he could not drive, lift,

19   use a keyboard, use manual tools, stretch or climb.   Dkt. 39, at 6.   This paperwork was filled out

20   right after his surgery, and there is no evidence that all of Plaintiff's limitations remained

21   afterward.   Defendant points to an undated entry in Unum's records which provides:   Plaintiff

22   "fixes leaks, he does drive.   [Plaintiff] is mainly active and replacing meters and doing manual

23   things and does paperwork for a few minutes at a time at the end of a job."   Dkt. 39, at 8.

24

1   Assuming these are an accurate reflection of Plaintiff's statements, these assertions are not

2   contrary to Plaintiff's claims.  Defendant notes that Plaintiff stated on December 18, 2013, that

3   he was told he was "unable to do his job due to injuries" and that he wanted to work, but was

4   "unsure what he [could] do." Dkt. 39, at 10.  Plaintiff doesn't contest that his doctor said at that

5   time he could not return to work, but Plaintiff has consistently maintained that the doctor based

6   his opinion on an inaccurate job description and that he felt he could do the job that he was

7   doing.  These statements are not inconsistent with his ADA and WLAD claims.

8           Defendant points to portions of his January 2014 Work Experience & Education

9   Questionnaire, that Plaintiff filled out for UNUM, in which Plaintiff listed "primary job duties"

10  as "meter, set meters, repairs, repair broken water and sewer meter, meter testing," and his

11  response to listing "tools and equipment, training and machines" for the job as "meter tester,

12  dump trucks, jack hammer, backhoes, excavator, crane truck, drag line, 90' [unreadable], vac

13  trailer, hand tools, chop saws," (Dkt. 39, at 13) as inconsistent statements with his assertions of

14  ADA and WLAD claims here.  Plaintiff states that he was describing tools used over the course

15  of his almost 30 years with the Defendant as a utilities system operator.  Dkt. 42, at 7.  Plaintiff

16  also points out that he has maintained that he could do the job as he was performing it at the time

17  of his injury, that the job varied from the formal job description, but that if the formal job

18  description was used, he could do that with reasonable accommodation.  Unum appears to make

19  no inquiry into accommodations.  Plaintiff's statements are not inconsistent with his claims.

20          Defendant lastly points to statements Plaintiff is alleged to have made on March 10,

21  2014.  Dkt. 39, at 19.  The summary of his statements provides:  "[a]ny physical work at all is

22  not something [Plaintiff] can do.  [Plaintiff] is a person that gives it 100% and he simply doenst

23  [sic] think there is anything for him to do." Dkt. 39, at 19.  Plaintiff directly disputes telling

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION TO STRIKE- 13

1   Unum that he could not do "any" physical work. Dkt. 42, at 6. There are issues of fact as to

2   whether the statement was made. Further, this single statement is simply not enough to conclude

3   that Plaintiff's positions now are "tantamount to a knowing misrepresentation to or even fraud on

4   the court." *Johnson*, at 1369. Summary judgment is not appropriate.

5          Moreover, although Plaintiff persuaded Unum to accept that, under their interpretation of

6   their policy, Plaintiff qualified for benefits, there is no evidence that his assertions of his current

7   position "would derive an unfair advantage or impose an unfair detriment" on the Defendant here

8   if not estopped. *Ah Quin*, at 270. Plaintiff's claims are not shown to be barred by the doctrine of

9   judicial estoppel. Defendant's motion for summary dismissal of his claims based on judicial

10  estoppel should be denied.

11         **D.  FAILURE TO MITIGATE DAMAGES**

12         The doctrine of mitigation of damages prevents an injured party from recovering

13  damages that could have avoided if the injured party had taken reasonable efforts after the wrong

14  was committed. *See Jackson v. Shell Oil Company*, 702 F.2d 197 (9th Cir. 1983); *Bernsen v. Big*

15  *Bend Elec. Coop*., 68 Wash.App. 427, 433, 842 P.2d 1047 (1993). As the entity asserting an

16  unreasonable failure to mitigate damages, Defendant bears the burden of proof. *Id.; Cox v. Keg*

17  *Restaurants U.S., Inc*., 86 Wash.App. 239, 244, 935 P.2d 1377 (1997). To satisfy this burden,

18  Defendant has to prove "that, based on undisputed facts in the record, during the time in question

19  there were substantially equivalent jobs available, which the plaintiff could have obtained, and

20  that the plaintiff failed to use reasonable diligence in seeking one." *Odima v. Westin Tuscon*

21  *Hotel,* 53 F3d. 1484, 1497 (9th Cir. 1995)(*internal quotations and citations omitted*).

22         Defendant's motion to summarily dismiss Plaintiff's claim for lost wages because of his

23  failure to mitigate his damages (Dkt. 38) should be denied. There are issues of fact regarding

24

ORDER ON DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND PLAINTIFF'S
MOTION TO STRIKE- 14

1   whether Plaintiff failed to sufficiently mitigated his damages.  Summary dismissal of the lost

2   wages claim is not appropriate.

3       Defendant has not shown that "substantially equivalent jobs" were available.  *Odima,* at

4   1497.  In its Reply, Defendant points out that Plaintiff was aware that a supervisor job came

5   available in one of its departments.  Dkt. 46.  It argues that Plaintiff testified that he felt he was

6   qualified for that job, but did not apply, so there was a "substantially equivalent job" available.

7   *Id.*  Plaintiff, however, also testified that he felt Defendant would not hire him because it fired

8   him.  Dkt. 47, at 6.  Despite what Plaintiff thought, Defendant does not make a showing that

9   Plaintiff was qualified for this position, nor does it show that it would have considered him for

10  the job.  It doesn't make a showing that it would have considered him regarding any other job.

11  Defendant, in its Reply, also argues that *Odima* has been criticized by other courts.  Dkt. 46.

12  This Court is bound by *Odima*, Defendant's arguments notwithstanding.

13      Moreover, Plaintiff states that he actively looked for work on various websites and paid

14  to keep his certificates current so that he would be eligible if any work came available in his

15  field.  Dkts. 40-1, at 13-15 and 42.  He states that he could not find any.  *Id.*  Plaintiff further

16  made efforts to find work in other fields, including participating in an eight month unpaid

17  internship and inquiring into jobs driving trucks.  *Id.*

18      In its Reply, Defendant argues that Plaintiff and his wife have taken inconsistent

19  positions regarding his job search in their declarations from those given during their depositions,

20  so their declarations cannot create an issue of fact.  Dkt. 46.  For example, Defendant argues that

21  Plaintiff states in his declaration that he looked weekly for jobs on the internet, and that he

22  testified he "occasionally" looked for jobs on the internet.  Dkt. 46, at 2.  These positions are not

23  so inconsistent that Plaintiff's claims should be dismissed.  Further, the fact that his wife states in

24

1  her declaration that she helped Plaintiff search online for jobs, but did not testify to helping him

2  online are not necessarily inconsistent when she wasn't asked about it.  At best, Defendant's

3  examples of inconsistencies cast questions on credibility.

4         There are issues of fact as to whether Plaintiff unreasonably failed to mitigate his

5  damages.  The motion for summary dismissal of Plaintiff's claim for lost wages should be

6  denied.

7                     **III.**    <u>**ORDER**</u>

8        **IT IS ORDERED** that:

9           •   Defendant's Motion for Summary Judgment (Dkt. 38) **IS DENIED;** and

10           •   Plaintiff's motion to strike (Dkt. 41) **IS DENIED WITHOUT PREJUDICE**.

11        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

12  to any party appearing *pro se* at said party's last known address.

13        Dated this 13th day of June, 2016.

14

15

16                  ROBERT J. BRYAN
                United States District Judge

17

18

19

20

21

22

23

24